Case No. 16-7060. Aquitas Disability Advocates LLC Appellant v. Jonathan Feigenbaum et al. Mr. Rowe for the Appellant, Mr. Stoller for the Appellant. Let's wait until the courtroom clears. We've lost our audience. Don't be offended. I know, I was hoping they were all here for me. Alright, Mr. Rowe. May it please the Court. I'm Eric Rowe. I'm here to represent the Appellant, Aquitas Disability Advocates, LLC. This case involves proceedings to enforce an arbitration award and presents issues arising under the District of Columbia revised Uniform Arbitration Act and the interplay between that statute and the Federal Arbitration Act. The case presents three issues. First, whether the District Court should have remanded this case to the D.C. Superior Court based upon the language in the arbitration agreement. Secondly, whether if the case was not to be remanded, whether the Court properly applied the correct standard in deciding the motion to vacate the award. And third, whether the Court erred in confirming the arbitration award. At the beginning, it is, of course, important to remember that arbitration is a matter of contract and solely a matter of contract. Arbitration occurs, to begin with, only because the parties have agreed to it and arbitrators have only those powers that the parties give them. In this case, the parties agreed that District of Columbia law would apply and they agreed to arbitrate here in the District of Columbia. And that agreement had several ramifications. First, the District of Columbia revised Uniform Arbitration Act provides that an agreement to arbitrate providing for arbitration in the District of Columbia confers exclusive jurisdiction on the Court to enter judgment on the award under this chapter. The Court is defined in the statute as the District of Columbia Superior Court, specifically. The District of Columbia revised Uniform Arbitration Act is part of the revised Uniform Arbitration Act that's been enacted by various jurisdictions around the country. It has significant differences from the Federal Arbitration Act, and the revised Uniform Arbitration Act, those differences occurred because of issues that have arisen in litigation under the Federal Arbitration Act. The choice of a specific court in the revised Uniform Arbitration Act has one specific purpose, and that purpose is to prevent forum shopping, which is an issue implicated in this case later on with respect to the... I haven't focused on that. I thought that the D.C. statute has its following and model, which is followed in all kinds of states. So are there any state decisions, similar statute, where the court does what you ask us to do here, which is to take the incorporation of D.C. law as a general matter in one clause to trump a specific clause on where the action may be enforced? The cases that we relied on with respect to this arise out of Pennsylvania and the Pennsylvania Uniform Arbitration Act. There was the Styron case that we submitted in our original brief, and the Monty case, which we cited in our reply brief. And in those cases, similar to this case, the parties had chosen Pennsylvania law as governing, which incorporated the Pennsylvania arbitration statute. In both cases, the case was removed from the Pennsylvania court to the Federal court, and in both cases the court required that the matter be remanded to... But in those cases, did the arbitration agreement have the equivalent of the second clause here now, which says it can be enforced in any court of competent jurisdiction? In those cases, did they have that language as well? They did not. But that's the issue. So that focuses the issue that's involved in this case. The very specific issue is, does the fact that this contract has that sentence... Any court of competent jurisdiction sounds broader than D.C. It does, but you have to put it kind of in context because the canons of contract construction that would be applicable in this case are that you have to give meaning and effect to all provisions of the contract. And you can do that and you lose, right? Because we can easily say, and courts have done this, that the first clause is referring to the substance and the second clause is procedural. And you're referring to the kind of analysis that was done in the Mastrobono case. But in here, this case is kind of backwards at that because in Mastrobono, the specific provision that related to arbitration was found in the NASD rules. And so the court found that the choice of law provision, the choice of New York law, was broad and related to the substantive issues while the issues related to arbitration were in the NASD rules. But your problem is that you have to deal with, you have to give meaning to that phrase, any court of competent jurisdiction. Right. And in context, in this case, it could mean one of a couple of different things. It could mean that as the one interpretation, candidly, is the one that we're discussing. Right. But there are others. And another is we have specifically chosen the District of Columbia Superior Court and we have also reserved the right later on, pursuant to the District of Columbia statutes, to choose some other court. And so any court of competent jurisdiction could be referring to one of the courts which we've chosen. Does the contract always have the power to change custody? They do. Because that's the hallmark of arbitration is you are doing what the parties have agreed to do. And so that's the issue on relating to whether. You've created an interpretation which itself appears to be useless. Well, in part. The other thing that we have to remember is that in agreeing to arbitrate under District of Columbia law, it's very clear that parties agree to arbitrate pursuant to the District of Columbia statutes. And the District of Columbia statutes, in turn, provide that the agreement that the Superior Court will be the exclusive jurisdiction  and they can decide until after the dispute has arisen. And so one of the reasons that it has to be interpreted that it can't be just any place on the planet is because the parties agreed that it would not be that when they agreed to arbitrate in accordance with District of Columbia law, which says that the exclusive jurisdiction won't be waived. Okay. So the second issue. You cite double H. It seemed to me there the court was using the statutory clause incorporated by reference to resolve what in some regards seemed to be an ambiguity. But you're using it to create ambiguity. I don't think so, Your Honor. In this case, the existing law is incorporated into the contract by reference. And the Supreme Court in the C&L Enterprises case made very clear that when parties agree to a governing law in the arbitration context, they're incorporating the state arbitration statutes. And so the District of Columbia arbitration statutes are part of the contract here. And I would like to reserve some time for rebuttal. And so I have about two minutes left. All right. Okay. Thank you. Mr. Stallard. Good morning, Your Honors. May it please the Court, my name is Ken Stallard, and I represent the appellees in this case, Jonathan Feigenbaum and the law firm of Daley, Dubofsky, and Bryant. Equitas' argument, particularly on the motion to remand, is essentially attempting to rewrite the parties' agreement. As the District Court found, it really comes down to a matter of contract interpretation. And the District Court looked at the Mastro Bono case to point out that just because there's a general choice of law provision in an arbitration contract, that doesn't end the analysis. You still have to go on to see what is meant by that, whether the actual procedural laws of the jurisdiction are incorporated in that. And as Judge Griffith pointed out, the problem with Equitas' argument here is that we've got that last sentence in that governing law paragraph in these contracts that specifically states that judgment may be entered into in any court of competent jurisdiction. As the District Court pointed out, that word any that we use every day is an expansive term. It's not a limiting term, as Equitas attempts to argue here. Also, as Judge Griffith pointed out, and I believe Judge Williams also, that if Equitas is correct in its interpretation, that that general choice of law provision includes making the D.C. Superior Court the exclusive forum for reviewing the arbitration awards, then that last sentence has no meaning. It's not capable of any meaning. And surely it's in there for something. And the something is that motions to review arbitration awards can be brought in any jurisdiction or any court having jurisdiction. How was the District Court supposed to think about the arbitrator's refusal to postpone the hearing? Right. The most recent case that I found out of the D.C. Court of Appeals, and we cited it in our brief, is the A1 Team USA Holdings case, which is kind of on point for that particular issue. That's decided after the revised D.C. Arbitration Act goes into effect. And there was an argument there on the court's review of an arbitrator's arbitration award on a motion to vacate. It wasn't the same paragraph that we have here, but it was still a motion to vacate. And the appellant in that case was arguing that the revised Arbitration Act created a different standard of review, a more expansive standard of review. But the D.C. Court of Appeals said that we conclude that neither the National Conference of Commissioners on Uniform State Laws, and that's the group that develops the uniform laws, nor the Council of the District of Columbia intended that the revised provisions of the Uniform Arbitration Act, including those related to vacating an arbitration award, would convert limited judicial review of the award to a de novo judicial merits review. So to answer your question, I think even after the revised Arbitration Act goes into effect, on these motions to vacate an arbitration award, I think the reviewing court's analysis of the arbitrator's decision is still a narrow one. It's not a de novo review, which is, I think, essentially what Equitas is arguing here, that the district court should make its own finding as to whether there is sufficient cause. But I think under the A1 Team USA holdings. What's your best argument that if it was de novo, let's imagine it was de novo review, what's your best argument that the arbitrator was correct to postpone the hearing? Well, again, the district court went through the analysis. The district court, and I think the arbitrator before it, pretty much assumes that everything that Equitas put forth as a basis for the postponement didn't meet the sufficient cause. Equitas, in its own affidavits and its own papers filed with the arbitrator, suggested that the reason it needed the postponement was because one of the lead counsel in the firm representing it was leaving that firm. But it turns out that Equitas learned that that attorney was leaving some five months before the arbitration date. And then when that attorney actually left, I think it was in June or July of 2014, when the arbitration winds up happening in early December of 2014, there were some communications between Equitas and the Jams case administrator in, I believe, October of 2014, where Equitas said, Our counsel's left us. We're probably going to need a continuance here. But never filed a motion. Never put the arbitrator himself on notice. So, of course, the appellees, Mr. Biden... Did they have counsel at that time? At which time? At the time you're referring to, you said they didn't file a motion or anything, but did they have counsel? At the time that Equitas filed the motion, they did not have counsel. That motion was actually filed not until after business hours on the Wednesday before Thursday Thanksgiving. And the arbitrator pointed out... There's a long tradition of that. That sounds like good lawyering, right? I guess. But because of that, Your Honor, I think the arbitrator points out in his ruling on it that he didn't wind up seeing this motion until December 1st, which I think was the following Monday. And, of course, Mr. Feigenbaum filed an opposition over that Thanksgiving weekend pointing out, you know, hey, Judge Robertson, the arbitrator, we've prepared. We've scheduled witnesses. We've cleared our calendar. We've bought nonrefundable plane tickets. Equitas has known about this attorney leaving the firm for a long time, and they don't point out why they haven't been able to find counsel. And another factor, Your Honor, that both the arbitrator and the district court pointed out is that Equitas hasn't pointed to anything that would indicate that the lack of a postponement prevented them from putting on any evidence that they otherwise would have been able to. In fact, at the conclusion of the arbitration hearing, the arbitrator granted the parties additional time to submit additional paperwork, and there's an indication in there that Equitas, in fact, did that. Your Honor, I'd like to address briefly, and that, I think, addresses the second point on appeal, the district court's denial of the motion to vacate the arbitration award. The third factor on appeal is the district court's granting of the motion to confirm the arbitration award. Your Honor, that essentially just comes down to, under both the federal statute and the District of Columbia Revised Arbitration Act, once there's been a denial of a motion to vacate, it pretty much becomes mandatory that the reviewing court grant the motion to confirm the award. If there are no more questions. All right. Thank you. Thank you. Does Mr. Rowe have any time left? Okay. Thank you. The District of Columbia statute relating to the vacature of the award provides that the court must or shall, as a mandatory basis, vacate the award when the arbitrator has refused to postpone the hearing upon a showing of sufficient cause. The standard in the D.C. Revised Arbitration Act is an objective standard, and it is objective in the only case. Aren't there D.C. cases? There is. There is. It's the Composio v. American Arbitration Association case. And that case held that there are only two issues for the court to decide on the motion to vacate. First, was there a request to postpone the hearing? And two, did the party seeking the postponement show sufficient cause? And that's an issue for the court to decide. It's not an issue for the arbitrator to decide. What says it's for the court to decide? I'm sorry? What says it's for the court to decide? Well, because that's the way the Composio court held. They said, you know, was there cause sufficient for us, the court, to vacate the award? For us? Yes, sir. Because the question for the court is whether or not there was sufficient cause shown for a postponement. If the answer is yes, then the arbitrator was required to give the postponement, and the court is required mandatorily under the Uniform Arbitration Act to vacate the award. And the A-1 team case doesn't change that. It said that this didn't change the existing law. Well, the Composio case was the existing law. And under the Composio case, the decision as to whether or not sufficient cause exists is for the court. And that's the way it should be, because otherwise- In your reply brief, you quote Composio using the language of abuse of discretion. Well, the Composio case talks about the discretion that's given to the arbitrator. But when you read the entire case and you think about what the statute requires and why the statute requires what it does, the discretion that the arbitrator abuses his discretion when he declines to grant a postponement when sufficient cause has been shown. And that's the way it ultimately works out. And so if there's- And in that case, the court found that sufficient cause had not been shown because the party seeking the postponement had asked for 10 times more time than was allowed by the rules. And so when the court finds that sufficient cause was shown, the statute commands that the award be vacated. And so the question is not whether the arbitrator was right or wrong or whether there's evidence to sustain his award or whether it's entirely possible from the evidence for him to come to that conclusion. That's not the question at all. The question is whether or not there was sufficient cause shown. And here there was. Mr. Abeles was without counsel. He was dealing with a room full of lawyers on the other side. There were complicated legal issues involved. And he was ready, willing, and able to pay all of these so-called unrefundable costs in the event of a postponement. Under those circumstances, sufficient cause existed and the postponement should have been granted. And this court should order that the award be vacated so that the case can be tried on a level playing field. Thank you. Thank you.
judges: Henderson, Griffith, Williams